UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILMA CECIL,

    on behalf of T.C.,                                Case No. 1:13-cv-162

        Plaintiff,                                      Spiegel, J.
                                                              Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that her grandson, T.C., is not disabled.[1] *See* 42 U.S.C. §405(g). Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

T.C. was born in June 2005, and an application for Supplemental Security Income ("SSI") benefits was filed on his behalf on April 29, 2009, shortly before his fourth birthday. After the application was denied initially and upon reconsideration,

---

[1] Unbeknownst to his custodial grandparents, T.C.'s mother filed the original application for Supplemental Security benefits on behalf of T.C. even though she did not have custody at the time. (Tr. 32). When Wilma Cecil discovered that her daughter had filed an SSI application, Plaintiff chose to continue to pursue the claim on her grandson's behalf, taking care to complete a change of payee form to avoid any errant payment to her daughter, whose custodial rights were terminated. (*Id.*).

Plaintiff timely requested an evidentiary hearing. In September 2011, Administrative Law Judge ("ALJ") Gregory Kenyon held a hearing, at which Plaintiff and her husband both testified. (Tr. 27-61). On November 14, 2011, ALJ Kenyon issued an unfavorable decision. (Tr. 11-26). The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Represented by counsel,[2] Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

T.C. was a preschooler at the time his application was filed, but 6 years old and a school age child by the time of the hearing. Plaintiff claims that T.C. is disabled due to his attention deficit hyperactivity disorder ("ADHD"), a mood disorder, an anxiety disorder, and expressive and receptive language deficits. The ALJ agreed that T.C. suffers from all of the referenced impairments, and that all of his impairments are "severe." (Tr. 17). However, the ALJ concluded that none of T.C.'s impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17). Therefore, the ALJ concluded that T.C. was not disabled from the date the application was filed through November 14, 2011, the date of the decision. (Tr. 22).

In her Statement of Errors, Plaintiff argues that the ALJ erred when he: (1) failed to find a "marked" limitation in T.C.'s ability to acquire and use information; (2) failed to find a "marked" limitation in T.C.'s ability to attend to and complete tasks; and (3) overly focused on T.C.'s ADHD and global functioning ("GAF") scores without sufficiently

---

[2] Plaintiff and her husband knowingly waived their right to counsel and were not represented at the time of the hearing.

2

considering T.C.'s depression and anxiety. As discussed below, the undersigned finds no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

In making its determination of whether a child is under a disability, the Social Security Agency is guided by a three-step sequential benefits analysis. At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe." At Step 3, the Commissioner determines whether the minor child meets or equals any Listing. A claimant can medically equal a Listing, or can functionally equal a Listing.

When reviewing the Commissioner's denial of benefits, the court's inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. ... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

### B. Specific Errors

In this case, the first two steps of the sequential analysis are uncontested. Given that T.C. was just six years old on the date of the decision, the ALJ found at Step 1 that he has never engaged in substantial gainful activity. The ALJ also agreed with Plaintiff that T.C.'s impairments were "severe" at Step 2. Plaintiff's only disagreement with the ALJ's analysis concerns the ALJ's conclusion at Step 3, that the claimant's impairments do not, singly or in combination, meet or equal a Listing. *See* 20 C.F.R. §416.924a. The ALJ specifically considered Listings 112.04 and 112.06 for mood disorder and anxiety, and Listing 112.11 for ADHD. (Tr. 17).

Plaintiff argues that the ALJ erred in determining that T.C. did not equal a Listing based upon his functional limitations. To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating

4

with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove that T.C. has an impairment that is functionally equivalent to a Listing, Plaintiff must show that T.C.'s impairments resulted in "marked" limitations in at least two of the six domains.[3] 20 C.F.R. §416.926a(d).

Here, the ALJ found that T.C. does not functionally experience a "marked" limitation in even one of the six domains. Plaintiff challenges the ALJ's determination only with respect to two domains: acquiring and using information, and attending and completing tasks. Plaintiff claims that T.C.'s limitations were "marked" in both areas. Significantly, Plaintiff does not challenge the ALJ's determination that T.C.'s limitations were "less than marked" in the domains of interacting and relating with others, in moving about and manipulating objects, and in caring for himself, and that T.C. has no limitations at all in the domain of health and physical well-being.

Because "marked" limitations are required in *at least* two domains in order to obtain benefits, ordinarily the undersigned would recommend affirmance of the non-disability decision if substantial evidence supports the ALJ's determination that T.C. has "less than marked" limitations in *either* of the two challenged domains. However, Plaintiff alternatively seeks to remand based upon a more general argument that the ALJ's entire analysis was fundamentally flawed due to over-emphasis on T.C.'s ADHD,

---

[3]Alternatively, a claimant may prove functional equivalence by showing "extreme" limitation in one domain, but Plaintiff does not specifically argue that T.C. had any "extreme" limitations. Only in her reply memorandum does Plaintiff suggest that T.C.'s limitations are "'marked' (and possibly even 'extreme')" in two categories, but this cursory and unsupported suggestion does not require separate analysis. (Doc. 20 at 3).

5

and on T.C.'s Global Assessment of Functioning ("GAF") scores. None of the asserted errors warrant remand; therefore, the undersigned recommends affirming the Commissioner's decision.

Plaintiff's primary arguments are that T.C. had "marked" limitations in two domains. "Marked limitation" in a particular domain exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. §415.926a(b) and (c); *see also generally* SSR 09-1p. Relevant to Plaintiff's challenge to the two referenced domains in this case,[4] a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2).

### 1. Acquiring and Using Information

The domain of acquiring and using information concerns a child's ability to acquire or learn information, and to use the information he has learned. The domain encompasses how well the child perceives, thinks about, remembers, and uses information in all settings, such as at home, school and the community. 20 C.F.R. §416.926a(g) and SSR 09-3p. The ALJ cited multiple sources in the record in support

---

[4]Additional definitions relate a "marked" limitation to functioning that would be expected on standardized testing, or as supported by scores on such testing, that are at least two but less than three standard deviations below the mean. Plaintiff does not present standardized test scores in the referenced domains or make any argument relating to those definitions.

of his determination that T.C. has "less than marked" limitations in this domain. The undersigned concludes that the ALJ's determination is supported by substantial evidence.

For example, in terms of cognitive assessment, Dr. Murphy opined in May 2010 that she estimated T.C.'s intelligence as "low average" and believed T.C.'s cognitive abilities and communicative functioning were at three-quarters of age-appropriate levels. (Tr. 221-222). In terms of expressive and receptive language abilities, T.C.'s scores on a preschool language scale in June 2008 and August 2009, ranging from 70 to 86, were interpreted as signifying only "mild" delays. (Tr. 225-226, 318-320).

T.C. advanced from preschool to kindergarten to first grade without being held back, and Plaintiff concedes that T.C.'s problem behaviors have decreased overtime. She argues that the ALJ failed to recognize that T.C.'s improvement in speech and language testing was only "slight," but that argument fails to rebut the conclusion that T.C.'s difficulties in those areas were deemed to be no more than "mild" based upon test results. The testimony of Plaintiff and her husband also was consistent with the ALJ's "less than marked" finding. They explained that T.C. had been previously seen by a speech therapist, but no longer saw one because his speech impediment had improved. (*See* Tr. 52-53, "Even the school accepts that ..he doesn't need [the speech class].").

Somewhat counterintuitively, Plaintiff contends that T.C.'s failure to improve at a more rapid rate signifies that his deficits have worsened to the "marked" level over time. In support of that hypothesis, Plaintiff notes that T.C. was provided with accommodations at the end of kindergarten and into first grade, but that his school later

7

scheduled an "Intervention Assistance Team" meeting to determine whether more accommodations were needed. (Tr. 214-215).  Plaintiff suggests that the ALJ erred by failing to include greater discussion of T.C.'s performance at school.  However, the referenced records show nothing other than the fact that T.C.'s school continued to monitor and evaluate his progress.

Additional school records are consistent with a "less than marked" impairment. Plaintiff testified that T.C.'s school originally recommended that he repeat kindergarten, but that he was promoted to first grade after attending two sessions of summer school. (Tr. 200, 213).  In language arts, T.C.'s first grade teacher assessed him as having "emerging" abilities in most areas. (Tr. 204-205).  The teacher commented that T.C. "struggles with blending letter sounds to make words [and] has been reading books with very simple text and repetitive words."  (Tr. 205).  In addition, she reported he has "some" difficulty following multi-step directions and gets distracted at times, but noted that he "is able to be redirected."  (Tr. 205).  T.C. was noted to "struggle[] with many math concepts," and received supplemental services for both reading and math. (Tr. 206, 207-211).  In November 2011, T.C.'s first grade teacher reported that he had made "limited progress," but continued to work "below grade level in major subjects." (Tr. 216-217). The teacher commented that T.C. was easily distracted, needed frequent redirection to stay on task, and was very impulsive. (*Id.*).  Plaintiff argues that the November 2011 report is significant, because it shows "noticeable and significant limitations" with T.C.'s functional abilities to "attend and concentrate" even after his medication regimen had been adjusted.  (Doc. 14 at 13).

8

The flaw in Plaintiff's argument is that neither a "noticeable" nor a "significant" limitation meets the definition of a "marked" limitation when evaluating the domain of acquiring and using information. Limitations in the "mild" and "less than marked" categories may be both "noticeable" and "significant." Contrary to Plaintiff's view, the undersigned finds the referenced school records to be more consistent with the ALJ's determination than inconsistent. As Defendant points out, no teacher has ever offered any formal opinion on the degree of T.C.'s impairments that would support a "marked" limitation in this domain. In fact, no school official or teacher has ever used the terms "marked" or "extreme" to describe the degree of T.C.'s limitations in any domain. This is not a case in which the ALJ failed to consider T.C.'s school records, which in total, comprise just 30 pages. (Tr. 188-217). Rather, the ALJ discussed T.C.'s preschool and school history, including the testimony of T.C.'s grandparents and teacher observations. (*See* Tr. 18, 20).

While the ALJ focused most on records from treating, evaluating, and reviewing sources, that focus appears reasonable given that those documents comprised the vast majority of the relevant record. (*See generally* Tr. 218-435). Consistent with school records, none of the medical sources opined that T.C. had "marked" or "extreme" limitations in any of the six domains. In fact, in September and October 2009, two physicians, two speech pathologists, and two psychologists all reviewed T.C.'s records and agreed that he had either "less than marked" or "no limitations at all" in each of the six domains, including acquiring and using information. (*See* Tr. 326, 333). A state agency physician, psychologist and speech pathologist all reached the same conclusion upon their respective reviews in April and June 2010. (Tr. 391-396).

9

The testimony of Plaintiff and her husband similarly supports the ALJ's finding of "less than marked" limitation in acquiring and using information. They testified that, despite T.C.'s continued problems with impulsivity and aggression, "we do have some of that in control now just through discipline and love and structure." (Tr. 44). They explained that T.C. had exhibited more challenging behaviors in the past, but that his behavior had improved over time. (Tr. 51). T.C. now has many good friends at school. (Tr. 54-55). Once T.C. was placed on proper medication, it helped "for a long time," even though experience had taught them that his growth rate required frequent dosing adjustments. (Tr. 45). In response to the ALJ's inquiry as to how T.C. deals with going to school, they testified "it's interesting and we hear about it" by consulting with his teacher daily. (Tr. 46). Concerta helps his ADHD in the mornings, even though it wears off in the afternoon. (Tr. 48). While T.C.'s grandfather testified that T.C. is "a challenge for the teacher," they described T.C.'s behavior as "fairly good" at home. (Tr. 47). Most behavioral issues arise after contact with T.C.'s mother, but contact is infrequent since she "isn't allowed visitation." (Tr. 47). In terms of school work, the grandparents testified that they assist T.C., and that "something that should take 20 minutes takes an hour-and-a-half," but that "he does it," especially when promised a reward. (Tr. 50). They acknowledged that some behaviors might be attributable to his young age. (*See* Tr. 50, "might be a standard six year old"). And, while T.C. does not yet participate in organized activities, they expressed no reservations about his ability to do so, and intend to sign him up for Webelos (the youngest Boy Scout troop) once it is offered. (Tr. 60).

In contrast to the single teacher report on which Plaintiff relies, the ALJ pointed out a note dated June 2011 in which his treating psychiatrist stated that T.C. was less hyperactive and guarded than in the past, seemed to be settling down, and was making more progress. (Tr. 422). Plaintiff suggests that the June note from T.C.'s psychiatrist should not weigh as heavily as school records that showed continuing impulsivity and focusing issues from mid to late 2011. (*See, e.g.,* 214-217). However, the school records are at least as readily, if not more readily, interpreted as supportive of the ALJ's "less than marked" finding in the domain of acquiring and using information. In other words, there is nothing in the school records that is clearly inconsistent with the ALJ's finding.

Plaintiff argues repeatedly that the same school records support a "marked" finding. However, it bears repeating that:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d at 1035. Here, the fact that subjective comments by T.C.'s first grade teacher could be interpreted to support *either* a "marked" or a "less than marked" finding does not mean that they must be interpreted in Plaintiff's favor. When viewed in the context of the record as a whole, it is abundantly clear that substantial evidence exists to support the ALJ's "less than marked" determination. Having concluded that substantial evidence supports that T.C. suffers from a "less than marked" limitation in the domain of acquiring and using information, arguably this Court needs to proceed no further, because Plaintiff challenges the ALJ's findings only in two

11

domains, and is required to show error in both to win remand. However, in the interests of complete review, the undersigned will consider the additional asserted errors.

### 2. Attending and Completing Tasks

As a second claim, Plaintiff argues that the ALJ erred in determining that T.C. has "less than marked" limitations in the domain of "attending and completing tasks." (Tr. 20). In support of his conclusion, the ALJ noted that T.C. was placed on Concerta in January 2009 and that, by March 2009, T.C.'s treating physician stated that T.C. had "slowed down" and was paying attention and listening better. (Tr. 229). A February 2009 progress note also reflects T.C.'s mother's report that she saw "dramatic improvement" in T.C.'s abilities to focus and sit still. (Tr. 286). Plaintiff points out that the March 2009 note was based upon the report of T.C.'s mother, and therefore should be viewed as unreliable. Plaintiff argues that the ALJ "read too far into the [psychiatrist's] statement" because it fails to specifically discuss T.C.'s mood and anxiety disorders. (Doc. 14 at 17). However, the February 2009 note includes the psychiatrist's own observation that T.C. was "less busy and more…responsive to parent's directions." (Tr. 286). Attempting to counter that independent professional observation, Plaintiff complains that "Dr. Collins did not specify how much of an improvement T.C. actually displayed." Plaintiff's argument in this respect is insufficient to overcome the fact that the records are easily interpreted in favor of the ALJ's "less than marked" finding.

The ALJ also cited an October 6, 2009 report by T.C.'s occupational therapist ("OT") that T.C. required "minimal to moderate" cues for attention, but that "redirection was effective." (Tr. 345). Plaintiff contends that the ALJ failed to mention more negative

12

statements in several other notes that documented T.C.'s difficulties with attending and completing tasks. Plaintiff selects statements from an October 20, 2009 therapy note that T.C. required "[m]od to max assist to follow 1 to 2 step commands." Plaintiff also quotes language from an October 27, 2009 note that T.C. "continues to fidget continuously when engaged in table activity," (Tr. 354), and from a January 2010 note that he required "max verbal cues for work play transitions," and had a "high energy level." On January 19, 2010, the OT noted that use of a "wiggle seat" while working on fine motor skills "appeared to be an added distraction." (Tr. 382).

Despite these selective quotations, Plaintiff concedes that the OT rarely reported that T.C. needed "maximum" assist with activities or with his ability to pay attention. Plaintiff also concedes that the OT reported that T.C. needed only "minimal" cues on some tasks. However, Plaintiff argues that the number of items for which the OT opined that T.C. needed "moderate" assistance supports a finding that T.C. had "marked" limitations in the domain of attending and completing tasks.

Once again, even if the undersigned agreed with Plaintiff's assessment of the OT records (which I do not), the issue is not whether the evidence might support an alternative finding, but whether substantial evidence supports the finding of "less than marked" limitation made by the ALJ. As previously stated, the more severe "marked" rating requires "more than moderate" limitations. Both the referenced OT notes and the record as a whole strongly support the ALJ's "less than marked" finding.

Plaintiff also insists that T.C.'s abilities did not approve "appreciably" over time, citing to an April 2010 note from Plaintiff's physician that documents T.C.'s continued issues with "high energy, cannot listen, …takes high risks…." (Tr. 431). The same note

13

reflects the physician's observations of T.C. as "very active, somewhat demanding, …and needs some firmness for redirection." (*Id.*). Based upon those observations, the physician changed T.C.'s medication to Adderall XR. However, the fact that a child with T.C.'s diagnoses continued to have limitations does not mean that his limitations were of listing level severity. Even Plaintiff acknowledges that notes from Central Clinic document a "lull" in T.C.'s functional limitations during much of 2010.

Plaintiff argues that by January 2011, T.C. showed an uptick in functional impairment, resulting in "marked" level impairment at that time. (*See* Tr. 402, note documenting T.C.'s impulsivity during evaluation). Plaintiff also cites an April 14, 2011 "Treatment Plan" record reflecting that T.C. continued to require therapy for his inability to sit still, too much energy, trouble thinking clearly and making good decisions, and trouble attending school and getting good grades. (Tr. 414). Plaintiff again refers to the first grade teacher report in which she noted T.C.'s "below grade level" performance. 205-206). But "below" grade level is not the same as "marked" impairment, defined as "more than moderate" or a showing that is functionally equivalent to at least two standard deviations below normative values on any standardized testing in the applicable domain. For the same reasons previously discussed, the selective evidence on which Plaintiff relies does not undermine the substantial evidence that supports the ALJ's "less than marked" finding.

Last, Plaintiff argues that the ALJ failed to address the impact of T.C.'s anxiety and mood disorders on the domain of "attending and completing tasks," as opposed to merely assessing the impact of his ADHD. It is difficult for the undersigned to understand what support Plaintiff has for the position that the ALJ failed to consider

14

T.C.'s anxiety and mood disorders. The ALJ pointed out that "a good portion of the child's anxiety-based symptoms resulted from being abused by his biological parent(s) and this has diminished with proper medication and placement in a safe environment with his grandparents." (Tr. 18-19, citing Tr. 422; *see also* Tr. 17, 19, citing Tr. 327, 334, 393). The ALJ also discussed the May 2010 evaluation of Dr. Murphy, the psychologist who diagnosed T.C. with anxiety disorder. (Tr. 20, 218-222).

In any event, Plaintiff posits that the record shows that T.C.'s limitations in the domain of "attending and completing tasks" was at a "marked" level due to his anxiety disorder, even after improvement of his ADHD symptoms on Concerta. (*See generally*, Central Clinic progress notes at Tr. 423-431). For example, a December 2011 "Diagnostic Assessment" states in its narrative section that T.C. "displays high anxiety and is highly active, impulsive, easily distracted, clumsy in his movements, has difficulty thinking clearly, and is hypervigilant to his surroundings." (Tr. 432). On close review, however, it is clear that the narrative description is provided to support the clinician's continued diagnostic impression that T.C. "meets the criteria for Posttraumatic Stress Disorder, Mood Disorder NOS and Attention-Deficit/Hyperactivity Disorder, and therefore should continue to receive services and treatment." (*Id.*).

The fact that T.C. continued to exhibit symptoms at a level that met diagnostic criteria and qualified for continuing treatment does not translate into a finding that the level of impairment was disabling under the entirely different criteria of a Social Security Listing for disability. Rather, the record provides more than substantial evidence to support the ALJ's conclusion that T.C.'s limitation in the domain of attending and completing tasks was "less than marked." Plaintiff selectively cites to records that

support some limitation, but that is to be expected with T.C.'s diagnoses. It is noteworthy that nine reviewing medical sources all were in agreement that T.C.'s limitations in this domain were "less than marked." (Tr. 325-337, 391-396). No school official, treating source, or consultative source has ever observed, noted, or offered an opinion that T.C. had any "marked" or "extreme" limitations in this or any other functional area.

In her reply memorandum, Plaintiff asserts that "it should not be necessary for any of T.C.'s teachers or medical providers to use 'magic words'" in order for the ALJ to find "marked" limitations. (Doc. 20 at 3). It is true that no "magic words" are required. But even Plaintiff concedes that it is the ALJ's "job…to interpret the factual evidence and determine" whether the level of impairment is marked or extreme. (*Id.*). The lack of any clear language by a teacher or medical provider that would support a "marked" limitation, coupled with nine opinions that T.C. has mild or "less than marked" limitations in the challenged domains, provides substantial - if not overwhelming - evidence for the ALJ's finding. It is also worth noting that the ALJ discussed virtually all of the same records on which Plaintiff now relies. (*See* Tr. 20). Needless to say, none of that evidence alters the undersigned's conclusion that the ALJ committed no error.

### 3. Analytical Error in Evaluation of the Record as a Whole

In addition to challenging two specific findings, Plaintiff challenges the ALJ's global analysis in two general ways. In the absence of showing that no substantial evidence exists to support the ALJ's findings of "less than marked" impairment in the

only two challenged domains, it is unclear whether Plaintiff's third "catch all" assertion of error would require remand.[5] Nevertheless, I find no error in the ALJ's overall analysis.

Plaintiff first argues that the ALJ relied too heavily on GAF scores reported throughout the record. At one point in his opinion, the ALJ pointed out that, with few exceptions, Plaintiff's GAF scores reflected improvement over time, with just one May 2010 score close to the "severe range, and with nearly all other scores "consistent with moderate symptoms and less than marked functional limitations." (Tr. 18-19). Plaintiff cites an unpublished Sixth Circuit case that holds that GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Com'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006). However, as Defendant is quick to respond, the Sixth Circuit has never held it to be error to discuss GAF scores in the context of the record as a whole. That is precisely what the ALJ did in this case. The ALJ never indicated that he was relying on GAF scores, or that he was giving special weight to any particular score. The brief discussion of GAF scores occurs only in the context of the ALJ's discussion of the record as a whole, and reflects no error or undue emphasis. *See, e.g., Price v. Com'r of Soc. Sec.*, 342 Fed. Appx. 172, 177 (6th Cir. 209)(affirming ALJ's rationale for rejecting medical source opinion that claimant's symptoms were debilitating, noting that source had assessed GAF scores in the mid-50s indicating only "moderate" symptoms).

---

[5]In her reply memorandum, Plaintiff frames her third argument as asserting that the ALJ "improperly weighed the evidence and medical opinions." (Doc. 20 at 1). The new iteration does not alter the substance of the argument, which the undersigned rejects as unsupported.

17

Plaintiff next finds fault with the ALJ's statement that he gave "great weight" to multiple medical opinions, including those of Dr. Murphy, a speech and language evaluation dated August 2009, and opinions of state agency reviewing physicians, "except that the child does appear to have some less than marked problems with fine motor skills." (Tr. 19). Plaintiff asserts that if the ALJ had given great weight to all of the referenced opinions, then he should not have left out anything contained in those opinions. Plaintiff asserts that "there are portions of each opinion which the ALJ did not adopt, and he did not adequately explain why. . .." (Doc. 14 at 19).

Plaintiff fails to identify, either by page number or by content, what "portions of each opinion" that the ALJ allegedly failed to adopt without explanation. The only example that Plaintiff offers is Dr. Murphy's May 2010 progress note in which he rated T.C.'s concentration, persistence, and pace at two-thirds of age-appropriate levels, and indicated that T.C.'s attention and concentration were "not strong" with T.C. being easily distracted. (Tr. 220, 222). However, the ALJ explained that he did not find that May 2010 report to be contrary to his findings of "less than marked" limitations, because treatment notes reflected that T.C. was on Adderall at the time,[6] a drug subsequently shown to be less effective than Concerta. T.C. was switched back to Concerta the following month. (Tr. 430). Plaintiff contends that the ALJ's reasoning is "flawed" because "it ignores the continued adverse effects of T.C.'s anxiety and depression," but Plaintiff offers no specific evidence to support that argument other than as previously discussed. Therefore, I find no error requiring reversal of the ALJ's decision.

---

[6]Plaintiff testified that at one point when T.C. was prescribed Adderall, he was in the custody of his mother, who sold T.C.'s prescribed medications rather than giving them to him. (Tr. 48).

18

### III. Conclusion and Recommendation

Plaintiff does not seek a direct award of benefits from this Court, but instead seeks only remand for further review. The undersigned concludes that the Commissioner's decision is supported by substantial evidence and that remand for further consideration of the record not required. Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFRIRMED**. As no other matters remain pending, this case should be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

WILMA CECIL,

    on behalf of T.C.,                                Case No. 1:13-cv-162

        Plaintiff,                                     Spiegel, J.
                                                        Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

    Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).